UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **MICHAEL KARLIX**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:09-cv-0804-SEB-DML |
| vs. ) | |
| ) | |
| **MICHAEL J. ASTRUE,** Commissioner of the ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ENTRY**

Michael Karlix seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"), 42 U.S.C. § 310, *et seq*. For the reasons explained in this entry, the Commissioner's decision is AFFIRMED.

*Applicable Law*

To be eligible for DIB, a claimant must prove that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908;

404.1508.

A five-step inquiry outlined in the Social Security regulations is used to determine disability status. Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520; 416.920. A finding of disability requires an affirmative answer at either step three or step five.

Id. The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. Id. at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938)).

### *Background*

Karlix filed an application for DIB effective as of September 15, 2005, alleging that he became disabled on June 10, 2005. His application was denied initially and upon reconsideration. On August 5, 2008, Karlix appeared with counsel at a hearing before Administrative Law Judge ("ALJ") John Henry Metz. A vocational expert also testified at his

hearing.  Prior to his hearing, Karlix's attorney signed and submitted a "Certificate of Case Readiness," stating in pertinent part that he certified "that except for continuing treatment records, all relevant evidence is up-to-date as of the date of this Certificate and that the case is ready to be heard."  (R. 241A.)  At the hearing, medical and other evidence was introduced into evidence.  During the hearing, the ALJ asked whether Karlix wished to enter any exhibits in addition to the ones already submitted and Karlix's attorney responded that he did not.  On November 7, 2008, the ALJ denied his claim, finding that Karlix was not disabled under the Act.  Karlix then submitted additional evidence on January 9, 2009, and on May 5, 2009, the Appeals Council denied review of the ALJ's decision, making the Commissioner's decision final. 20 C.F.R. § 404.981.  This action for judicial review of the ALJ's decision followed.  The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

      The ALJ found that Karlix met the insured status requirements of the Social Security Act through December 31, 2010.  At step one of the sequential evaluation process, he found that Karlix had not engaged in substantial gainful activity since June 30, 2005, the alleged onset date.  At step two, the ALJ found that Karlix has "severe" impairments consisting of back disorder, hypertension, cervical radiculopathy, headaches, and mild emphysema.  The ALJ found at step three that Karlix does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ next determined that Karlix has the residual functional capacity ("RFC") to perform

light work as defined in 20 C.F.R. 404.1567(b) with the following restrictions: sit for eight hours, stand and walk for four hours each out of eight; lift ten pounds frequently and twenty pounds on occasion; no climbing ladders, working at heights or around moving machinery; only occasional bending, stooping, kneeling, balancing, no repetitive use or reaching overhead with the right upper extremity.  At steps four and five, the ALJ found that Karlix has the ability to perform his past relevant work as a microbiologist as well as a substantial number of other jobs in the economy.  Based on these findings, the ALJ concluded that Karlix was not disabled.

## *Discussion*

Mr. Karlix challenges the ALJ's decision at steps three, four, and five.  Karlix first argues that the ALJ's determination at step three that Karlix does not meet or equal a listed impairment was based on an incomplete set of medical records.  On January 9, 2009, after the ALJ's opinion had been rendered, Karlix supplemented the record with a substantial number of additional medical records predating the hearing in front of the ALJ.  Karlix contends that, when these later submitted medical records are considered, the totality of the evidence establishes that he meets listing of Impairment 1.04(a) and has since June 30, 2005.  Karlix also argues that, even without considering the additional medical records, the record as it existed at the time of the hearing was sufficient to establish his disability.  According to Karlix, the ALJ's decision is not supported by substantial evidence because proper weight was not given to the opinions of his primary care physicians for the purposes of deciding his disability status at steps three through five.  We address these arguments in turn.

*Additional Evidence*

Karlix first argues that the supplemental medical reports and information submitted on January 9, 2009[1] should be considered in determining his disability status because they complete the record and establish his impairment. This argument is not compelling for several reasons. The court can only accept and consider additional evidence that was not before the ALJ if it is new, material, and if the claimant has good cause for not previously submitting it to the ALJ. Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997). Karlix is unable to establish that the evidence he seeks to submit meets the "new" or "good cause" requirements.

To be "new" evidence, the evidence must not have been in existence or available to Karlix at the time of the ALJ hearing. Id. at 1296. Here, the additional medical information dates from 1995 through 2002, long before the hearing before the ALJ. Thus, the evidence cannot be considered new because it was in existence at the time the hearing was held and Karlix has made no attempt to offer any proof that it was unavailable to him at that time. To establish that the evidence is "material," the claimant must show both that there is a "'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered'" Id. at 1296 (citing Sample v. Shalala, 999 F.2d 1138, 1144 (7th Cir.1993)) and that the evidence was integral "to the claimant's condition during the relevant time period encompassed by the disability application under review." Anderson v. Bowen, 868 F.2d 921,

---

[1]Cervical MRI performed January 5, 1995 (R. 256.), Cervical MRI performed February 16, 1998 (R. 257.), Physical Therapy notes from Indiana University Medical Center (R. 259-63.), Medical Assessment performed by Francis X. Dillon, M.D. on December 16, 2002 (R. 264-67.), Records of Indiana University Medical Center (R. 268-302.), Transcript of a conversation between Karlix and Robert Huler, M.D. of the Indiana University School of Medicine (R. 303-310.)

927 (7th Cir. 1989). The additional information Karlix submitted for consideration dates back to 1995, a full decade prior to his claim for disability, and is thus largely irrelevant to the time period that Karlix claims to be disabled. Finally, Karlix is unable to show just cause for his failure to previously submit the evidence. Karlix's attorney represented that the evidentiary record was complete at the time the hearing was held by signing the Certificate of Case Readiness. Then, at the hearing, his attorney again represented that there was no new evidence to submit. Clearly, Karlix was given every opportunity to supplement the record with evidence that was in existence and available to him at the time, but he failed to do so. In fact, in his reply brief, Karlix admits that he cannot show good cause for failing to submit the evidence to the ALJ and concedes that he understands if the additional information is not taken into consideration. Due to Karlix's inability to show that the evidence was new or that he had good cause for not submitting the evidence at the appropriate time, it carries neither probative nor dispositive weight in regard to his disability status.

*Treating Physicians' Opinions*

Karlix next argues that, even if the Court does not consider the later submitted medical records, the evidence that was in the record at the time of the hearing establishes that he meets the Act's listing requirements for disability at step three, or, in the alternative, that he is disabled pursuant to the vocational guidelines.[2] Karlix contends that the ALJ failed to give proper weight

---

[2] In his briefing in support of his motion, Karlix quotes from a transcript of a conversation between himself and Dr. Huler regarding his condition. However, as the Commissioner argues, there is no indication of the context of this conversation, how it was recorded, or if Dr. Huler was under oath at the time. For these reasons, this conversation will not be given weight in our analysis.

to the opinions of his treating physicians, Dr. Leon and Dr. Dillon, and thus, the ALJ's opinion is not supported by substantial evidence. We turn first to his argument regarding Listing 1.04(A).

In order to meet the requirements for disability under Listing 1.04(A), the plaintiff must have a disorder of the spine or spinal cord evidenced by nerve root compression characterized by all of the following: neuro-anatomic distribution of pain; limitation of motion of the spine; motor loss (atrophy with associated muscle weakness) accompanied by sensory reflex loss; and a positive straight-leg raising test (for lower back disability). 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04(A). "For a claimant to show that his impairment matched a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

As the ALJ determined, Karlix has not shown any evidence of nerve root compression during the relevant time period of his alleged disability. There was some evidence of nerve root compression in a 1995 MRI, but as discussed above, that evidence was not properly submitted to the ALJ, and thus, it cannot be considered. Even if it were considered, subsequent MRI studies in 1998 and 2003 showed no indication of nerve root compression. Most importantly, none of the evidence submitted to the ALJ from the relevant time period (i.e., from June 2005, when he alleged he became disabled, to November 2008, the date of the ALJ's decision) showed any signs of nerve root compression. Karlix argues that some of his symptoms nevertheless are characteristic of nerve root compression; however, those findings are based in large part on medical evaluations that are outside of the relevant time period or that were not properly submitted to the ALJ. For these reasons, the ALJ had substantial evidence to conclude that Karlix did not meet the Listing requirement for disability under the Act.

Karlix next contends that his treating physicians' opinions regarding his functional capacity to continue gainful employment were not given proper controlling weight. When deciding which sources will be given controlling weight, the Act specifies that the claimant's treating physician shall be entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). The controlling weight, however, is only allowed so long as there is concomitant supporting clinical evidence in his or her reports that is not inconsistent with other substantial evidence that is also on the record. *See id.* § 404.1527(d)(2). Here, there is evidence in the record that Karlix exhibits several symptoms which result in severe pain and that pain is substantiated by reports from Dr. Leon that state that Karlix is unable to maintain his former occupation, or any occupation for that matter. These reports, however, are contradicted by the state agency's findings, the RFC assessments, and Karlix's own actions. For example, Dr. Leon reported that Karlix was incapable of holding down even a low stress job and that he was in constant pain. (Pl.'s Br. 7.) The ALJ, however, noted the absence of corroborating evidence to support these conclusions outside of Dr. Leon's documentation of Karlix's self-reported symptoms and pain and also found the opinion to be contradicted by Dr. Leon's own treatment notes and the remainder of the record.[3] Furthermore, it is well-established that "[a] claimant . . . is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' Under the Social Security regulations, the Commissioner is in charge with determining the ultimate issue of disability." Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). This position is bolstered by the Seventh Circuit's findings that, while helpful in many respects, a treating

---

[3] The ALJ duly noted the reports of both Dr. Leon and Dr. Dillon, but found that those reports did not conclusively state disabilities that would preclude Mr. Karlix from all work activity, especially activity related to his former occupation or lesser activities. (R. 24-25.)

physician's opinion can also hurt the plaintiff's position, "[s]ince, as is well known, many physicians. . . will often bend over backwards to assist a patient in obtaining benefits." <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 377 (7th Cir. 2006).

 Karlix stated that he lived alone, drove his car, cooked his meals, and shopped for his own groceries (R. 23.) Exhibits 8F and 9F in the record document the findings of the state agency examinations in which Karlix was found to be able to perform light work with postural activities occasionally, evidenced by his ability to lift ten pounds regularly, twenty pounds occasionally, and that he could stand or sit for about six hours in a work day with occasional breaks. (R. 213-220, R. 221-228, respectively.) In his finding, the ALJ noted that upon examination, Karlix had a normal gait and no limitation in his lumbar spine. (R. 24.) The ALJ found quite interesting the fact that, although being diagnosed with chronic cervical radiculopathy, Karlix had not opted for surgery, he had discontinued his treatment at a facility, and used only oral medication to control the pain. (R. 24.) Karlix's reply to these findings by the ALJ is rebutted almost exclusively with inadmissable evidence from the decade prior and thus lends little credence to his argument. Under these facts, we cannot find error in the ALJ's decision to give controlling weight to the state agency examiners' reports pursuant to 20 C.F.R. § 404.1527(d)(2), as opposed to the opinions of Karlix's treating physicians.

 Nor can we find error in the ALJ's finding that Karlix has the RFC to perform his past work and/or other relevant work in the economy. If the ALJ finds that a claimant is able to perform his or her past work based on residual functional capacity, he or she will not be found to be disabled. 20 C.F.R. § 404.1560(b)(3). Secondarily, if the ALJ finds that the claimant cannot return to his or her past work, the ALJ will use the same RFC assessments in conjunction with

vocational expert testimony to determine if the claimant can perform alternative occupations in the economy based on age, education, and work experience. 20 C.F.R. § 404.1560(c). Relying on the evidence in the record from the state agency examiners as well as testimony from vocational experts, the ALJ found that Mr. Karlix could perform his past occupation in addition to numerous other jobs in the economy. Using the state agency examiners' reports, the ALJ asked a vocational expert if Karlix could perform the job of a microbiologist. The vocation expert replied affirmatively (R. 350.) Additionally, the vocational expert found that even if Mr. Karlix could not return to his job as a microbiologist, there are approximately 20,000 other jobs in the economy at lesser skilled positions that he could also perform. (R. 350-351.) In light of these facts, we find that there was substantial evidence supporting the ALJ's conclusion that Mr. Karlix did not meet steps four or five, and thus, was not disabled.

### *Conclusion*

Because we find that the ALJ's decision is supported by substantial evidence and free of legal error, we AFFIRM the Commissioner's decision.

**IT IS SO ORDERED.**

Date: _____06/08/2010_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

John P. Young
YOUNG & YOUNG
john@youngandyoungin.com

11